## MATTER OF AJAELO

### In Deportation Proceedings

A–17639400

A–20029121

*Decided by Board August 16, 1974*

The Department of State's determination that an exchange visitor under section 101(a)(15)(J) of the Immigration and Nationality Act was subject to the two year foreign residence requirement of section 212(e) of the Act, because he had received governmental financial aid, is not conclusive in determining the issue of such financial aid. As part of the immigration judge's consideration of an application for adjustment of status under section 245 of the Act he must make an independent determination on the issue of governmental financing.

CHARGE:

Order: Act of 1952—Section 241(a)(2)[8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer (both respondents).

ON BEHALF OF RESPONDENTS:
Donald L. Ungar, Esquire
517 Washington Street
San Francisco, California 94111

ON BEHALF OF SERVICE:
B. J. Hornbach, Esquire
Trial Attorney

This is an appeal from an order of an immigration judge finding the respondents deportable and granting them voluntary departure. The record will be remanded to the immigration judge for further proceedings.

The respondents are husband and wife, natives and citizens of Nigeria, who were admitted to the United States as nonimmigrant visitors on November 15, 1968 and January 29, 1971, respectively. On April 28, 1969 the male respondent's status was changed to that of a student. On March 22, 1972 both respondents' applications for adjustment of status under section 245 of the Immigration and Nationality Act were denied and they were granted the privilege of departing voluntarily by April 22, 1972. They failed to depart and deportation proceedings were instituted. On February 6, 1974 the immigration judge found them to be deportable as charged and granted them voluntary departure.

The record indicates that prior to his most recent entry, the male respondent in 1966 had participated in an exchange visitor program

under section 101(a)(15)(J) of the Act (Exh. 4). As an exchange visitor, he became subject to the foreign residence requirement of section 212(e) of the Act, as amended, and unless he could show that he qualified for exemption from it, he was precluded from applying for permanent residence until it was satisfied. The District Director concluded that the male respondent was, in fact, subject to this requirement, and, since he had not fulfilled it, both he and his wife were ineligible to receive immigrant visas (Exh. 2). The record reflects that the male respondent's application for a waiver of the foreign residence requirement of amended section 212(e) was denied by the Department of State (Tr. p. 39). However, it is counsel's position that the male respondent does not require a waiver since he is not subject to the foreign residence requirement of section 212(e) by the very terms of that provision.

As amended in 1970, section 212(e) provides that no person admitted under section 101(a)(15)(J), or acquiring such status after admission, shall be eligible to apply for permanent residence if his participation in the exchange visitor program "was financed in whole or part, directly or indirectly, by an agency of the Government of the United States or by the government of the country of his nationality or his last residence . . . until it is established that such person has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States . . . "

At the hearing in 1972 the male respondent maintained that he had not received any funds through the exchange visitor program in which he participated (Tr. pp. 11–17). The immigration judge noted that this program, designated "P-3-2502, Afro-American Institute," appears on a list compiled by the Department of State, Bureau of Educational and Cultural Affairs, which indicates that it has determined such program to have been governmentally financed within the scope of amended section 212(e). The immigration judge found this to be conclusive evidence that the male respondent was not exempt from the foreign residence requirement. When the hearing was resumed in 1974, the respondent, through present counsel, reasserted his claim and offered to present evidence in support of it (Tr. pp. 39–40). The immigration judge declined to receive such evidence on the ground that he had no jurisdiction to review the State Department's determination in this regard, and was, in effect, bound by it (Tr. p. 40). Counsel contends, and we agree, that the immigration judge was in error.

We find that the question of whether the male respondent is subject to the foreign residence requirements of amended section 212(e) is a proper one for the immigration judge to decide, apart from the views of the State Department. Such a determination bears on the male respondent's eligibility to receive an immigrant visa, and when it is presented

in connection with an application for adjustment of status under section 245 of the Act, it is clearly within the jurisdiction of the immigration judge, as are all questions of admissibility. While an alien's participation in a program which the State Department has determined to be governmentally financed may create a presumption that he, in fact, received funds thereby, this presumption may be rebutted by competent evidence to the contrary. Cf. *Matter of Oum*, 14 I. & N. Dec. 340 (BIA 1973). The immigration judge's refusal to consider an offer of such evidence by the respondents in this case constituted prejudicial error and warrants a remand so that the record may be completed. The immigration judge should then make a new determination regarding the respondents' eligibility for section 245 relief. Accordingly, the following order will be entered.

ORDER: The record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion.